IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:19-CR-172 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| JESSICA RAE REZNICEK, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

# Table of Contents

INTRODUCTION ................................................................................................................. 1

ADVISORY GUIDELINES RANGE ................................................................................... 2
  *1.* The PSR is factually accurate as written............................................................. 2
  *2.* The offense was intended to promote a federal crime of terrorism .................. 2

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 70 MONTHS' PRISON..... 6

CONCLUSION...................................................................................................................... 12

## INTRODUCTION

Reznicek and codefendant Montoya conspired to destroy and sabotage the Dakota Access Pipeline (DAPL) in South Dakota and Iowa. As part of the agreement, Reznicek and Montoya engaged in a series of extremely dangerous actions including using accelerants to set fire to numerous construction vehicles and using an acetylene torch to burn holes in the pipeline. Their actions were calculated to both prevent the DAPL from being constructed, and influence or affect the conduct of the United States government by intimidation or coercion, and/or to retaliate against government conduct. The Court should impose a sentence of 180 months' imprisonment.

1

## ADVISORY GUIDELINES RANGE

The PSR correctly calculates the advisory guidelines range as follows:

| | |
|---|---|
| Base offense level (§2K1.4(a)(4)) | 23 |
| Terrorism Enhancement (§3A1.4(a)) | +12 |
| Acceptance of responsibility (§3E1.1) | -3 |
| Total offense level | 32 |
| | |
| Criminal History | VI |
| | |
| Guidelines range: | 210-240 months' imprisonment |

1. *The PSR is factually accurate as written*

Defendant objects to inclusion of information pertaining to attacks on the DAPL prior to November 8, 2016, as set forth in PSR ¶¶ 10-13. Given the similar nature and location of these attacks on the DAPL, the information contained therein is relevant to sentencing and should be considered by the court.

2. *The offense was intended to promote a federal crime of terrorism.*

Defendant objects to terrorism enhancement under USSG §3A1.4(a) (PSR ¶ 37) because her conduct was not "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). This conclusion is contrary to Reznicek's own statements and should be rejected by the Court.

Section 3A1.4 provides: (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32. The term "federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g) as "an offense that: (A) is calculated to influence or affect the conduct of government by intimidation or

coercion, or to retaliate against government conduct; and (B) is a violation of section ... 1366(a) (relating to destruction of an energy facility)....

On July 24, 2017, Defendants Reznicek and Montoya released a public statement wherein they admitted to committing numerous acts of vandalism and sabotage to the Dakota Access Pipeline (DAPL) in Iowa and South Dakota. (PSR ¶ 27; Ex. 2). Shortly thereafter, Reznicek and Montoya publicly read their statement in front of the Iowa Utilities Board (Ex. 53, 54), the state government agency responsible for regulating[1] utilities to ensure that reasonably priced, reliable, environmentally responsible, and safe utility services are available to all Iowans.[2] (PSR ¶ 27; Ex. 2).

The defendant's written statement clearly identifies the government as the target of their destructive conduct. While the statement begins by describing DAPL as an issue that affects the entire nation, Reznicek and Montoya quickly pivot to what

---

[1] Oil and gas pipelines are regulated by both federal and state agencies across the United States. Interstate pipelines are managed by the Federal Energy Regulatory Commission (FERC) and the U.S. Department of Transportation (DOT). The Federal Energy Regulatory Commission regulates pipelines, storage, natural gas transportation in interstate commerce, and liquefied natural gas facility construction. It also oversees operation of pipeline facilities at U.S. points of entry for natural gas imports and exports and analyzes environmental impacts of natural gas projects. Once natural gas pipeline projects are operating, the Department of Transportation's Pipeline and Hazardous Material Safety Administration (PHMSA), acting through the Office of Pipeline Safety (OPS), regulates, monitors and enforces safety. The OPS collaborates with partnering agencies and departments to ensure pipeline operation safety, security, monitoring and compliance. Although the federal government is responsible for developing, issuing and enforcing pipeline safety regulations, most inspections are conducted by state regulatory agencies, which are responsible for regulation, inspection and enforcement of pipelines within state boundaries. The state agency regulations must be at least as stringent as the federal regulations. https://www.ncsl.org/research/energy/state-gas-pipelines-federal-and-state-responsibili.aspx

[2] https://iub.iowa.gov/about-us/mission-vision-statements.

they clearly perceive to be the larger issue, namely: "the rule of law, indigenous sovereignty, land seizures, state-sanctioned brutality, as well as corporate protections and pardons for their wrongdoings. To all those that continue to be subjected to the government's injustices, we humbly stand with you, and we ask now that you stand with us." (PSR ¶ 27).

More specifically, Reznicek and Montoya assert the complicity of the federal courts, arguing they "gave permission to lie and withhold information from the public resulting in a complete media blackout." (PSR ¶ 27). As a result, Reznicek and Montoya viewed sabotage of the DAPL "as an opportunity to encourage public discourse surrounding nonviolent direct action as well as exposing the inadequacies of the government and the corporations they protect." (PSR ¶ 27).

Defendants go on to describe their frustration with legal avenues of protest, including but not limited to public commentary hearings and environmental impact statements, which led them to see the "clear deficiencies of our government to hear the people's demands." (PSR ¶ 27). As a result, Defendants conclude the system is broken[3] necessitating individuals to take direct action to remedy what they perceived to be the government's inadequacy. (PSR ¶ 27).

Reznicek and Montoya then proceed to describe, in detail, the way they targeted and destroyed equipment and infrastructure associated with the DAPL and the locations where they did so. According to their statement, they provided said

---

[3] [T]he courts and public officials allowed these corporations to steal permissions from landowners and brutalize the land, water, and people.

4

detail in the hope that it would "inspire others to act boldly and peacefully." (PSR ¶ 27). When their calculated sabotage failed to garner sufficient media attention, they concluded "the federal government and Energy Transfer Partners colluded together to lie and withhold vital information to the public." (PSR ¶ 27).

While releasing such a statement may seem self-defeating, Reznicek and Montoya made clear their intent:

> For some reason the courts and the ruling government value corporate property and profit over our inherent human rights to clean water and land. We are speaking publicly to empower others to act boldly, with purity of heart, to dismantle the infrastructures which deny us our rights to water, land, and liberty. We as civilians have seen the repeated failures of the government and it is our duty to act with responsibility and integrity, risking our own liberty for the sovereignty of us all.

(PSR 27, Ex. 64).

While stopping the DAPL may have been the immediate purpose of their unlawful conduct, Reznicek and Montoya's ultimate goal was to address "the broken federal government and the corporations they continue to protect." A federal government which they described as "more like a Nazi fascist Germany as each day passes." (PSR ¶ 27).

This was not the first time Reznicek has written about her disdain for the government. In April of 2017, Reznicek penned an article entitled Uncomfortable for Via Pacis, the voice of the Des Moines Catholic Worker community. In said article, Reznicek indicates that she began to see the U.S. government as an "oppressive regime" when she was about 12 years old. (Ex. 1). In response to this perceived problem, Reznicek states "[p]roperty destruction, or as I prefer to call it, property

5

improvement, is the only solution I foresee." (Ex. 1). As with her written statements concerning her DAPL sabotage, Reznicek describes her prior tactics protesting government oppression as: "still meaningful and empowering in many ways, simply are not dismantling the infrastructure in which evil institutions operate from." (Ex. 1). "Property improvement I believe without a doubt will shut this corrupt system down." (Ex. 1). Reznicek goes on to state that "[w]e need to focus on dismantling this blood-sucking beast that is killing everything we love and honor." (Ex. 1). To be clear, Reznicek is not speaking solely about a private energy company when she writes:

> I believe the days of marching past the infrastructures whose businesses specializes in killing everything and everyone who stands in its way of a dollar are over. It is time to dismantle the White House! And then on to our Statehouses and then to the oil refineries, and then to Monsanto. Tear it all down and rebuild a work of beauty.

(Ex. 1). These statements, much like the ones she makes in her statement about the DAPL sabotage are clearly designed to influence or affect the conduct of government by intimidation or coercion, and/or to retaliate against government conduct.

**THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 180 MONTHS' PRISON**

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and

        D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). For the reasons that follow, the § 3553(a) factors support a sentence of 180 months' imprisonment.

On July 24, 2017, Defendants Reznicek and Montoya released a public statement wherein they admitted to committing numerous acts of vandalism and property damage in the Iowa and South Dakota beginning on election night, November 8, of 2016. (Ex. 2). However, in the months leading up to November 8, 2016, a number of very similar incidents targeting DAPL construction sites had occurred.

In July of 2016, two bulldozers were completely destroyed by fire at a Jasper County DAPL construction site. (PSR ¶ 10; Ex. 8, 9, 10). An oil filter removed from one of the construction vehicles appeared to have been used to ignite the fire. (PSR ¶ 10). It was later discovered that three bulldozers and a backhoe/log transport were similarly set on fire at another DAPL construction site in Mahaska County that same night. (PSR ¶ 11; Ex. 11, 12, 13).

On August 1, 2016 a DAPL employee discovered an excavator had been completely destroyed by fire the previous weekend at a DAPL construction site in Jasper County Iowa. (PSR ¶ 12; Ex. 14, 15, 16). Finally, on October 15, 2016, four construction vehicles (three dozers and an excavator) were completely destroyed by

fire at a Jasper County DAPL construction site. (PSR ¶ 13; Ex. 17, 18). Investigators later determined that newspapers soaked in fuel had been ignited in and around the engine compartment and cab of the construction vehicles. (PSR ¶ 13). No one has claimed responsibility for these crimes.

The first arson claimed by Reznicek and Montoya occurred at a DAPL construction sire in Buena Vista County, Iowa, on November 8, 2016. (PSR ¶ 14). As with the prior incidents, several construction vehicles (two Caterpillar side booms, a Caterpillar excavator, a Caterpillar dozer, and a John Deere excavator) had been set on fire and completely destroyed. (PSR ¶ 14; Ex. 22, 23, 24). The cause of the fire was determined to be accelerant and motor oil poured into plastic coffee cans, lit with a match, and placed in the cab or around the equipment. (PSR ¶ 14).

In March of 2017, Reznicek and Montoya began utilizing an acetylene torch to cut holes in the DAPL. (PSR ¶ 15). On March 17, 2017, DAPL employees discovered a small hole on the north side of the east pipeline that had appeared to have been made with a blowtorch. (PSR ¶ 15; Ex. 25, 26). Fluid was leaking from the hole. (PSR ¶ 15). On the same day at a DAPL construction site in Cherokee County, an electrical worker discovered several holes had been cut in the pipeline with a cutting torch. (i.e., acetylene torch) or similar tool. (PSR ¶ 16; Ex. 27, 28, 29). The pipeline was unusable and required repair at considerable expense. (PSR ¶ 16).

On the same day at DAPL construction sites in Sioux County, Iowa, Reznicek and Montoya utilized an acetylene torch to compromise the DAPL at two separate locations. (PSR ¶ 17; Ex. 30, 31, 32, 33, 34). Finally, on the same day in Lincoln

8

County, South Dakota, Reznicek and Montoya once again utilized an acetylene torch to damage the pipeline in two obvious locations. (PSR ¶ 18; Ex. 35, 36, 37). Responding agents in South Dakota immediately noticed a whistling or hissing sound originating from the 30-inch diameter pipeline. (PSR ¶ 18). It was determined the sound was caused by nitrogen gas escaping the pipeline from at least one of the damaged areas. (PSR ¶ 18).

On March 18, 2017, a member of the construction team observed a burned area on the north side and east end of the pipeline at the Boone County DAPL construction site. (PSR ¶ 19; Ex. 38, 40). While the DAPL was extensively burned, no penetration of the pipe appeared to have occurred. (PSR ¶ 19). In addition to said damage, a nearby shed was spray painted with the following statements "ur children need water," "OIL IS DEATH," and "Mni Wiconi" (a Lakota Native American saying meaning water is life). (PSR ¶ 19; Ex. 39).

By early April of 2017, Reznicek and Montoya had depleted the supplies necessary to operate the acetylene torch. (PSR ¶ 27). As a result, they decided to return to arson in an effort to sabotage the DAPL. (PSR ¶ 27). On April 9, 2017, Reznicek and Montoya set three separate fires targeting mounted instrumentation and electrical conduits controlling the DAPL valve site near Hendrick, Iowa. (PSR ¶ 22; Ex. 41, 42, 43, 44, 45). Gasoline was utilized to set fire to several tires underneath the instrumentation and electrical structures of the DAPL, and next to a small building. (PSR ¶ 22). Later that month on April 27, 2017, Reznicek and Montoya again utilized accelerant-soaked towels to ignite tires around an electrical

junction box at a DAPL construction site in Buena Vista County, Iowa. (PSR ¶ 23; Ex. 46, 47, 48).

In early May 2017, an individual was caught on camera at a Humboldt, South Dakota DAPL valve site. (PSR ¶ 24; Ex. 49, 50). An on-site camera captured the individual wearing black outerwear, gloves, a dark baseball cap, and possibly a dark mask. (PSR ¶ 24; Ex. 50). The individual carried a yellow crate which appeared to contain equipment associated with a hand-torch. (PSR ¶ 24; Ex. 50). Items and clothing consistent with this description were later recovered from the residence where Reznicek and Montoya were living. (PSR ¶ 24; Ex. 55-63). Witnesses observed a female, wearing black clothing, a bandana, and a pink under shirt, carrying a milk crate containing what they believed to be an acetylene torch. (PSR ¶ 24; Ex. 55-63). This individual later entered a car bearing Iowa plates before driving away. (PSR ¶ 24).

Finally, on May 2, 2017, authorities discovered that Reznicek and Montoya had attempted to cut a hole in the pipeline at a DAPL site located in Hedrick, Iowa. (PSR ¶ 25; Ex. 51, 52). The hole was made with a cutting torch and was similar to the vandalism acts occurring between March 13 and 17, 2017. (PSR ¶ 25; Ex. 51, 52).

The calculated tactics employed by Reznicek and Montoya to hinder and destroy construction of the DAPL are extremely hazardous and dangerous. By using accelerants to set fire to thousands of dollars of worth of construction equipment and using an acetylene torch to burn holes into a pipeline which would soon transport natural gas, Reznicek created an extremely dangerous situation. Her decisions and

conduct failed to take anything other than her own opinions and desires into consideration. Certainly not the significant financial impact to the victim company and the consumers who would benefit from the DAPL. (Ex. 65, filed under seal).

Worse yet, subsequent to their attempts to sabotage the DAPL, Reznicek and Montoya sought to multiply the impact of their criminal behavior by embarking on a speaking tour designed to inspire and encourage other would be terrorists. (Ex. 3, 5, 6, 7). On August 26, 2017, Reznicek and Montoya gave a presentation at the Iowa City Public Library entitled Why We Acted: Finding Common Ground. (Ex. 5). During this presentation, Reznicek and Montoya discussed their attempts to sabotage the DAPL and encouraged those present to do the same. (Ex. 5A, 5B, 5E, 5F, 5G). Reznicek and Montoya bragged about not getting caught and railed against state repression. (Ex. 5C, 5D, 5F).

On September 29, 2017, Reznicek spoke at a venue in Minneapolis entitled Dismantling DAPL: A Conversation with Jess Reznicek and Ruby Montoya. (Ex. 6). During this presentation, Reznicek and Montoya encouraged the audience to "consider property destruction" as a means of stopping the pipeline (Ex. 6A), bragged about evading criminal charges (Ex. 6B, 6E), discussed tactics to avoid detection (Ex. 6C, 6D), and that burning the machinery was the right thing to do (Ex. 6E).

There is also evidence that Reznicek and Montoya successfully motivated others to engage in similar acts. (Ex. 4). In August of 2017, the Facebook page for Shut Down Fossil Fuels apparently blocked an oil train from public travel. As part of that post proclaiming this action, the group stated their "action is in solidarity with

Ruby Montoya and Jessica Reznicek - who successfully taught themselves how to sabotage the Dakota Access pipeline (DAPL), delayed construction of DAPL for weeks, and never got caught until they turned themselves in recently. We admire their courage tremendously." (Ex. 4).

Of course, this was not Reznicek's first experience with so called direct action. In May of 2016, Reznicek was found guilty of criminal mischief and criminal trespass in Sarpy County Nebraska. (PSR ¶ 61). Her conviction was based upon her actions at the Bellevue, Nebraska branch of Northrup Grumman Corporation. (PSR ¶ 61). More specifically her use of a bat and sledgehammer to break multiple windows of a value greater than $5,000. (PSR ¶ 61).

Reznicek was also convicted of vandalizing the exterior signage of the Iowa Utilities Board immediately following her public statement on July 24, 2017. (PSR ¶ 71).

## CONCLUSION

The government's recommendation in this case is based primarily on the seriousness of the offense, including the danger, potential danger, and significant financial loss caused by the actions of Reznicek and Montoya. In addition, the need to afford adequate deterrence to criminal conduct, including criminal conduct Reznicek and Montoya sought to inspire, is also significant given their actions and statements following their attempts to sabotage the DAPL. The Court should impose a sentence of 180 months' imprisonment.

        Respectfully Submitted,

        Richard D. Westphal
        Acting United States Attorney

By:   */s/ Jason T. Griess*
        Jason T. Griess
        Assistant United States Attorney
        United States Courthouse Annex
        110 East Court Avenue, Suite 286
        Des Moines, Iowa 50309-2053
        Tel: (515) 473-9300
        Fax: (515) 473-9292
        Email: Jason.Griess2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2021, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_\_ U.S. Mail   \_\_\_\_ Fax   \_\_\_\_ Hand Delivery

 X  ECF/Electronic filing   \_\_ Other means (email)

UNITED STATES ATTORNEY

By:   */s/ Dawn Thomas*
     *Paralegal Specialist*

13